UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN MCBRIDE,

    Plaintiff,

v.                                      Case No. 3:20-cv-620-TJC-JRK

WALMART INC., et al.,

    Defendants.

**ORDER**

This employment case is before the Court on Defendants Walmart Inc., Doug McMillion, and two store managers' Motion to Dismiss. (Doc. 9). Plaintiff Steven McBride, proceeding pro se, filed a Response in opposition. (Doc. 16).

## I.    BACKGROUND

McBride filed this lawsuit on June 17, 2020. (Doc. 1). McBride alleges eleven violations: (1) discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); (2) discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 ("ADEA"); (3) discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); (4) "NLRA"; (5) "unfair business practices act"; (6) "negligence"; (7) "discrimination"[1]; (8) "slander/libel"; (9) "breach of confidentiality"; (10) "sexual

---

[1] Because McBride alleges this violation under state law, (Doc. 1 at 2),

harassment"; and (11) "hostile work environment." (Doc. 1 at 2–3). In support, McBride includes thirteen internal employee complaints he submitted to Walmart ("Walmart complaints") (Docs. 16-9–16-23), the Equal Employment Opportunity Commission's ("EEOC") Dismissal and Notice of Rights (Doc. 1-1), a partial summary of the claims (Doc. 1-2), and a Charge Against Employer form he submitted to the National Labor Relations Board ("NLRB") (Doc. 1-3).

McBride's Complaint is not a model of organization or clarity, but it appears to allege a patchwork chronology of improper conduct and various challenges at the Walmart Supercenter where he worked. (Docs. 16-9–16-23; 1-2). To the extent that the Court can decipher the allegations, the Court recounts that chronology below.

Walmart hired McBride on December 10, 2018 to work as a "cap-2 associate."[2] (Doc. 1-2). McBride filed his first Walmart complaint on May 6, 2019, saying that a supervisor, Jose, lied to an assistant manager in an attempt to get a fellow associate fired, verbally abused that associate, bragged about trying to get another associate fired, told multiple Walmart associates private information about an associate, threatened to fire McBride for making Jose look bad, and threatened to fire anyone who listened to McBride. (Doc. 16-9).

---

the Court presumes this count alleges a violation of the Florida Civil Rights Act, FLA. STAT. §§ 760.01 to 760.11.

[2] McBride does not define "cap-2 associate."

2

In a document titled "Facts," included among McBride's Walmart complaints in the exhibits to his Complaint, McBride argued that his first Walmart complaint was confidential, and a supervisor broke that confidentiality. (Doc. 16-10 ¶ 10). McBride further stated that managers "John" and "IVI" told all the other cap-2 associates not to communicate with McBride, that an assistant manager assigned him to work in the health and beauty aid department as a punishment for his previous Walmart complaint, and that Defendants passed over McBride for a vacant supervisor position, in favor of a white employee who had not worked at Walmart as long and did not have any college education. Id. ¶¶ 20–22.

In McBride's second Walmart complaint, dated July 3, 2019, he recounted unsafe working conditions including broken containers of chemicals in his workspace. (Doc. 16-11). Additionally, he was forced to unload products while it rained and the floor was wet, in the dark, and with a damaged tool. Id.

In McBride's third Walmart complaint, dated July 19, 2019, he asserted that an assistant manager told him and other associates they could not discuss salaries. (Doc. 16-12 ¶ 2). He also claimed he and other male employees were forced to retrieve grocery carts under threat of firing. Id. ¶ 7. In his fourth Walmart complaint, dated July 31, 2019, McBride argued that in response to the third Walmart complaint, upper-level staff read a written statement to McBride clarifying he could discuss wages, but that he and other associates

3

believed McBride was being "set up" and they were still scared to talk about wages after the events transpired. (Doc. 16-13 ¶¶ 1–6).

McBride's fifth Walmart complaint dated August 13, 2019, focused on Walmart C.E.O. Doug McMillion. McBride concluded that McMillion misled Walmart employees and customers about the average wages being paid to Walmart employees to "affect commerce," "affect the job-hunting market," stop the associates from organizing, and stop customers from boycotting Walmart stores. Id. ¶¶ 2–10. In McBride's sixth Walmart complaint, dated August 28, 2019, he said Walmart improperly stored hazardous materials, including wet bullets. (Doc. 16-15 ¶¶ 6–10). He further explained that while in transport, hazardous materials were stored in hot trucks. Id. ¶ 11(d)–(f). McBride also listed hazardous materials he was required to unload. Id.

McBride's seventh Walmart complaint, from September 8, 2019, recounted how an assistant manager pretextually terminated an employee for violating unclear safety standards, as a response to members organizing for better wages. (Doc. 16-16). His eighth Walmart complaint, dated September 23, 2019, detailed how a supervisor forced an associate to use dangerous equipment. (Doc. 16-17 ¶¶ 3–9). That complaint also said that the supervisor lied to an assistant manager about an associate quitting. Id.

In McBride's ninth Walmart complaint, dated October 28, 2019, he complained about having only one chance to work overtime despite consistently

4

communicating his availability. (Doc. 16-18 ¶ 5). In comparison, three white associates all hired after McBride routinely received overtime, which led to a pay disparity. Id. ¶¶ 6–7.[3] McBride also stated that all three men were vocal about refusing to form a union. Id. ¶¶ 11–12.[4]

McBride's tenth Walmart complaint, from November 10, 2019, stated that he and other associates had a right to file a civil action for the improper cleanup of paint containing hydrofluoric acid and forcing employees to work with paint fumes. (Doc. 16-19). His eleventh Walmart complaint, dated December 15, 2019, asserted that he overheard a supervisor call McBride "gay" to other associates and tell them he would call McBride "your Daddy." (Doc. 16-20 ¶¶ 5–6). McBride further claimed that the supervisor solicited and received Jacksonville Jaguar merchandise from an associate and made sexual advances towards two female associates (one of whom quit as a result). Id. ¶ 7.

The twelfth Walmart complaint, from December 22, 2019, asserted that a supervisor forced McBride to unload items from a truck trailer while the truck's engine was running. (Doc. 16-20 ¶ 4). In a separate document, McBride

---

[3] McBride said the three white associates bragged about getting paychecks between $1,300 and $1,500 while McBride only received a paycheck of $750. Id. ¶ 8.

[4] In response to McBride's complaint to the Occupational Safety and Health Administration ("OSHA"), McBride claimed the three men were chosen to speak on Walmart's behalf and say there were no safety violations.

5

stated that on December 30, 2019, an assistant manager promised to promote two newly hired white men sooner than all the more senior cap-2 employees. (Doc. 1-2). McBride's thirteenth Walmart complaint, from January 15, 2020, stated that he was subjected to an interrogation in retaliation for his December 15, 2019 Walmart complaint, during which two female interrogators made inappropriate accusations about him. (Doc. 16-21 ¶ 7).

In their Motion to Dismiss, filed October 21, 2020, Defendants argue that the Complaint should be dismissed for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and as a "shotgun pleading" that failed to give adequate notice of the claims and the grounds upon which each claim rests under Federal Rules of Civil Procedure 8(a)(2) and 10(b). (Doc. 9). In his response, McBride argues that Defendants properly waived service of process and that by including all his internal complaints to Walmart as well as related documents filed with the EEOC and NLRB, he sufficiently stated his claims. (Doc. 16).

## II.   DISCUSSION

The Court bears in mind that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, "[d]espite construction leniency afforded pro se litigants,

6

we nevertheless have required them to conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002) (per curiam).

### A. Service of Process

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Proper service of process is governed by Federal Rule of Civil Procedure 4. Under Rule 4(e), an individual may only be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Rule 4(h), a corporation must be served:

> (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(c)(i).

McBride named both a corporation and individuals as Defendants, so both rules are relevant. McBride improperly sent the Complaint by certified mail, failed to

7

properly serve waivers of process, failed to obtain waiver signatures, and did not hire a process server. (See Docs. 6, 16). McBride contends that he spoke with a legal representative of the Defendants, who agreed over the phone to waive service of process. (Doc. 16 at 1–2). But Rule 4 does not allow verbal waiver request: "The notice and request [for a waiver] must: (A) be in writing . . . ," among other requirements. Fed. R. Civ. P. 4(d)(1)(A). Therefore, the Court must dismiss the case for insufficient service. However, because McBride may attempt to properly serve the Complaint, the Court will review it so plaintiff may file an amended complaint if he is so inclined.

### B. Shotgun Pleading

Defendants assert that the Complaint (Doc. 1) is a shotgun pleading. The Eleventh Circuit has long warned against shotgun pleadings:

> [W]e have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants

>     adequate notice of the claims against them and the grounds upon
>     which each claim rests.

Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015). McBride's Complaint falls into the latter three categories. It pronounces conclusory allegations with references to a packet of documents, but without specifying which facts are relevant and to which allegations. (See Doc. 1). Although the Court could reasonably infer a connection between some facts and causes of action, McBride's Complaint fails to describe the facts associated with some counts altogether, including "slander/libel" and negligence. Id. Finally, McBride fails to specify which claims he asserts against which Defendants. Id.

In short, the allegations do not properly inform Defendants, or the Court, of the claims asserted or of the facts upon which those claims rest. The Court cannot go through all the pages and exhibits filed with the Complaint to determine which claims correspond to which facts and which Defendants. See Osahar v. U.S. Postal Service et al., 297 Fed. App'x 863, 864 (11th Cir. 2008) (per curiam). The closest McBride comes to making a short and plain statement is in a document attached to the EEOC Dismissal and Notice of Rights that summarizes his allegations, but the summary does not meet the standards of the Federal Rules of Civil Procedure 8(a)(2) and 10(b). McBride's Complaint (Doc. 1) must therefore be dismissed.

### C. Leave to Amend

"A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires.'" Woldeab v. Dekalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988)). "Where it appears that a more carefully drafted complaint might state a claim, a pro se plaintiff 'must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" Powers v. Sec'y, U.S. Homeland Sec., 846 Fed. App'x 754, 758 (11th Cir. 2021) (per curiam) (quoting Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (holding that this rule does not apply to counseled plaintiffs)). Some of McBride's claims may be able to go forward if they are presented in a complaint that complies with the Federal Rules of Civil Procedure. Therefore, the Court dismisses the Complaint (Doc. 1) without prejudice, and McBride may file an amended complaint if he so chooses.

It is difficult for a person to pursue a lawsuit without a lawyer and the Court suggests McBride strongly consider hiring one to assist him in evaluating whether he has a potential case to bring, and if so, to determine an advisable strategy. If he chooses not to obtain an attorney, the Jacksonville Chapter of the Federal Bar Association operates a Legal Information Program on the ninth

10

floor of the United States Courthouse, 300 North Hogan Street, Jacksonville, that provides free information to pro se litigants. The program is typically available every Tuesday from 11:00 a.m. – 12:30 p.m. by appointment, but during the COVID-19 pandemic, appointments have been virtual or telephonic.[5] If McBride does not contact a lawyer to represent him, he is encouraged to take advantage of the Legal Information Program.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 9) is **GRANTED**. The Complaint (Doc. 1) is **DISMISSED without prejudice**.

2. If he so chooses, Plaintiff may file an amended complaint no later than **August 27, 2021**. He must then properly serve that complaint before the case can go forward.

**DONE AND ORDERED** in Jacksonville, Florida the 23rd day of July, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

---

[5] Plaintiff may make an appointment by calling the Jacksonville Clerk's Office at (904)-549-1900. More information is available at https://www.flmd.uscourts.gov/legal-information-program.

LK
Copies:

<u>Pro se</u> Plaintiff
Counsel of record